**No. 14-12422-B**

# United States Court of Appeals
## FOR THE ELEVENTH CIRCUIT

IN RE: WELLCARE HEALTH PLANS, INC.,
*Petitioner*,

v.

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA,
*Respondent*;

United States v. Todd S. Farha, Paul L. Behrens, William L. Kale, Peter E. Clay,
*Additional Respondents/Real Parties in Interest*.

On Petition for a Writ of Mandamus to the
U.S. District Court for the Middle District of Florida
(Hon. James S. Moody, Jr., Docket No. 8:11-cr-115-T-30MAP)

## JOINT OPPOSITION OF RESPONDENTS TODD S. FARHA, PAUL L. BEHRENS, AND WILLIAM L. KALE

Jeffrey A. Lamken
  *Counsel of Record (Behrens)*
MOLOLAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000
(202) 556-2001 (fax)
jlamken@mololamken.com
*Counsel for Paul L. Behrens*

Seth P. Waxman
  *Counsel of Record (Farha)*
WILMER CUTLER PICKERING HALE &
  DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
202-663-6000
202-663-6363 (fax)
seth.waxman@wilmerhale.com
*Counsel for Todd S. Farha*

Stanley J. Reed
  *Counsel of Record (Kale)*
LERCH, EARLY & BREWER, CHTD.
3 Bethesda Metro Center, Suite 460
Bethesda, MD 20814
301-657-0177
301-347-1796 (fax)
sjreed@lerchearly.com
*Counsel for William L. Kale*

*(Additional counsel listed on inside cover)*

John F. Lauro (application pending)
LAURO LAW FIRM
101 East Kennedy Blvd., Suite 3100
Tampa, Florida 33602
813-222-8990
jlauro@laurolawfirm.com

Michael P. Matthews
Lauren L. Valiente
FOLEY & LARDNER LLP
100 N. Tampa Street, Suite 2700
Tampa, Florida 33602
813-225-4131
mmatthews@foley.com
lvaliente@foley.com

*Counsel for Paul L. Behrens*

Lauri E. Cleary
James Bradford McCullough
LERCH, EARLY & BREWER, CHTD.
3 Bethesda Metro Center, Suite 460
Bethesda, MD 20814
301-657-0177
lecleary@lerchearly.com
jbmccullough@lerchearly.com

Patrick M. Donahue
  (application pending)
WISE & DONAHUE
18 West Street
Annapolis, MD 21401
410-280-2023
pmd@wisedonahue.com

Larry Allen Nathans
NATHANS & BIDDLE, LLP
120 East Baltimore St., Suite 1800
Baltimore, MD 21202
410-783-0272
nathans@nathanslaw.com

*Counsel for William L. Kale*

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE &
  DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
212-937-7294
alan.schoenfeld@wilmerhale.com

Laura L. Vaughan
  (application pending)
GEORGE & TITUS, P.A.
100 S. Ashley Dr., Suite 1290
Tampa, Florida 33602
813-273-0355
lvaughan@georgeandtitus.com

L. Barrett Boss (application pending)
COZEN O'CONNOR
1627 I Street, NW, Suite 1100
Washington, DC 20006
202-912-4818
bboss@cozen.com

*Counsel for Todd S. Farha*

## CERTIFICATE OF INTERESTED PERSONS
## <u>AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rules 21-1(b) and 26.1-1, counsel for respondents Todd S. Farha, Paul L. Behrens, and William L. Kale certify that they are not aware of any interested persons omitted from the certificate of interested persons and corporate disclosure statement contained in WellCare Health Plans, Inc.'s petition, but:

Pursuant to 11th Circuit Rule 26.1-1, respondents deny that WellCare Health Plans, Inc. is a victim in the underlying criminal case.

June 9, 2014                              /s/ Jeffrey A. Lamken
                                          Jeffrey A. Lamken

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................1

BACKGROUND .....................................................................................3

I.    Statutory Background.......................................................................3

II.   Factual Background..........................................................................4

     A.   The Conduct at Issue .............................................................4

     B.   WellCare Enters into a Deferred Prosecution Agreement and Stipulates That It Conspired To and Did Defraud AHCA.......................5

     C.   The Indictment, Trial, and Verdicts .........................................7

     D.   The District Court Rejects WellCare's Effort To Recast Itself as a Victim........................................................................................9

ARGUMENT ........................................................................................11

I.    Participants in the Offense Like Wellcare Are Not "Victims" Entitled to Restitution ....................................................................................13

     A.   Participants, Including Co-Conspirators, Are Not "Victims"................13

     B.   WellCare Is Not a "Victim" Because It Was Not Merely Accused of, But Admitted Commiting, the Alleged Offense .....................................14

     C.   Contrary Arguments Are Foreclosed .....................................16

II.   The District Court Properly Ruled That WellCare Had Not Established the Requisite Direct Injury ...............................................................19

     A.   The Offense Conduct Did Not "Directly" Cause WellCare's Asserted Harms .............................................................................19

     B.   The Cases Invoked by WellCare Are Inapplicable................................22

i

III.  WellCare Cannot Establish Entitlement to Relief Under Mandamus
      or Any Other Standard ..................................................................24

      A.    The Traditional Mandamus Standard Applies .........................25

      B.    WellCare Cannot Establish the Remaining Mandamus Standards........26

            1.   WellCare Has Failed To Establish Injustice .................................27

            2.   WellCare Has Failed To Demonstrate Irreparable Injury.............27

            3.   Discretionary Factors Weigh Against Granting the Writ .............28

      C.    The Petition Does Not Meet the Standard for Ordinary Appellate
            Review................................................................................29

CONCLUSION ..............................................................................30

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Acker*, 596 F.3d 370 (6th Cir. 2010) ...............................................25

*In re Antrobus*, 519 F.3d 1123 (10th Cir. 2008)................................25, 26

*In re: Bankr. Estate of AGS*, No. 14-1296, 2014 WL 1329357
    (4th Cir. Apr. 4, 2014) ....................................................................14

*In re BellSouth Corp.*, 334 F.3d 941 (11th Cir. 2003)........................25, 29

*Burrage v. United States*, 134 S. Ct. 881 (2014) .....................................20

*In re Cargill, Inc.*, 66 F.3d 1256 (1st Cir. 1995) ....................................27

*In re Dean*, 527 F.3d 391 (5th Cir. 2008) ...............................................25

*Eastwood Enters., LLC v. Farha, et al.*,
    No. 8:07-cv-01940-VMC-EAJ (M.D. Fla. 2007)..............................29

*In re Instituto Costarricense di Electricidad*, No. 11-12707
    (11th Cir. June 17, 2011) ................................................................26

*Kenna v. U.S. Dist. Court*, 435 F.3d 1011 (9th Cir. 2006) ....................26

*In re Moody*, — F.3d —, No. 13-12657, 2014 WL 948510
    (11th Cir. Mar. 12, 2014).................................................................12

*Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2005) .............................26

*N.Y. Cent. & Hudson River R.R. Co. v. United States*,
    212 U.S. 481 (1909)........................................................................18

*Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678 (11th Cir. 2014) .................17

*Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260 (11th Cir. 2011) ...........12, 13, 17, 25, 27

*U.S. ex rel. Stevens v. Richards*, 33 App. D.C. 410 (D.C. Cir. 1909) ....................27

*In re Stewart*, 552 F.3d 1285 (11th Cir. 2008) .......................................24

*In re Stewart*, 641 F.3d 1271 (11th Cir. 2011) ................................................*passim*

*United States v. A & P Trucking Co.*, 358 U.S. 121 (1958) ....................................18

*United States v. Alcatel-Lucent France, SA*, 688 F.3d 1301
    (11th Cir. 2012)...............................................................................*passim*

*United States v. Archer*, 671 F.3d 149 (2d Cir. 2011) ..........................................14

*United States v. Cummings*, 189 F. Supp. 2d 67 (S.D.N.Y. 2002)........................22

*United States v. Fernandez-Toledo*, 737 F.2d 912 (11th Cir. 1984) .....12, 13, 25, 27

*United States v. Gold*, 743 F.2d 800 (11th Cir. 1984) ...........................................18

*United States v. Gupta*, 925 F. Supp. 2d 581 (S.D.N.Y. 2013) ..............................23

*United States v. Lazarenko*, 624 F.3d 1247 (9th Cir. 2010) ............................*passim*

*United States v. Monzel*, 641 F.3d 528 (D.C. Cir. 2011)........................................25

*United States v. Piggie*, 303 F.3d 923 (8th Cir. 2002)...........................................23

*United States v. Reifler*, 446 F.3d 65 (2d Cir. 2006) ........................................14, 28

*United States v. Robertson*, 493 F.3d 1322 (11th Cir. 2007) ..........................19, 22

*United States v. Skowron*, 839 F. Supp. 2d 740 (S.D.N.Y. 2012)........................23

*In re W.R. Huff Asset Mgmt. Co.*, 409 F.3d 555 (2d Cir. 2005) ............................26

*In re Walsh*, 229 F. App'x 58 (3d Cir. 2007)..........................................................26

*WellCare Health Plans, Inc., v. Behrens, et al.*, No. 10-CA-021335
    (Fla. 13th Cir. Ct.)...................................................................................27

*WellCare Health Plans, Inc., v. Farha*, Nos. 07-015349,
    07-015846 (Fla. 13th Cir. Ct.) ................................................................27

*WellCare Health Plans, Inc., v. Todd S. Farha, et al.*,
    No. 8:07-cv-1952-T-30EAJ (M.D. Fla. 2007)....................................27

## STATUTES AND REGULATION

18 U.S.C. § 1001 ...................................................................................8

18 U.S.C. § 1035 ...................................................................................7

18 U.S.C. § 1347 ...................................................................................8

Mandatory Victims Restitution Act, 18 U.S.C. § 3663A ...............................*passim*

    18 U.S.C. § 3663A(a)(2) ...........................................................19

    18 U.S.C. § 3663A(c)(3)(B) ......................................................28

Crime Victims' Rights Act, 18 U.S.C. § 3771 ...............................................*passim*

    18 U.S.C. § 3771(c)(1).........................................................9, 16

    18 U.S.C. § 3771(d)(1) ......................................................14, 15

    18 U.S.C. § 3771(d)(3) ...........................................................12

    18 U.S.C. § 3771(e) ................................................................19

42 C.F.R. § 438.2 (2007) .......................................................................3

1993 Fla. Laws, ch. 93-129, § 50...........................................................3

Fla. Stat. § 409.912 .............................................................................3

Fla. Stat. § 409.912(4)(b).....................................................................4

*In re: WellCare Health Plans, Inc.*, No. 14-12422-B
**INDEX OF EXHIBITS TO RESPONDENTS' OPPOSITION**

| Exhibit | Description |
|---------|-------------|
| A | August 31, 2012 Letter from AUSAs Jay Trezevant and Cherie Krigsman to Defense Counsel |
| B | May 5, 2009 Deferred Prosecution Agreement |
| C | May 19, 2014 Sentencing Transcript |
| D | Indictment |
| E | Trial Transcript: 4 Tr. 2/26/13 P.M. (Excerpts) |
| F | Trial Transcript: 52 Tr. 4/8/13 P.M. (Excerpts) |
| G | Trial Transcript: 74 Tr. 4/29/13 P.M. (Excerpts) |
| H | Trial Transcript: 51 Tr. 4/8/13 A.M. (Excerpts) |
| I | Information, *United States v. WellCare*, No. 8:09-cr-00203 (M.D. Fla.) |
| J | United States' Response to the Court's Order Directing the Parties to Submit Trial Briefs Concerning the Amount of Loss, Dist. Ct. Dkt. 798 |
| K | WellCare Health Plans, Inc.'s Motion to be Recognized as a Crime Victim and to be Awarded Restitution, Dist. Ct. Dkt. 841 |
| L | Defendants' Response to WellCare's Motion to be Recognized as a Crime Victim and to be Awarded Restitution, Dist. Ct. Dkt. 852 |
| M | Trial Transcript: 3 Tr. 2/26/13 A.M. (Excerpts) |
| N | Defendants Farha, Behrens, and Kale's Joint Consolidated Memorandum Regarding Common Enhancements and Variance, Dist. Ct. Dkt. 875 |
| O | Order Granting Motion To Realign WellCare as Plaintiff, *Well-Care Health Plans, Inc., v. Todd S. Farha, et al.*, Case No. 8:07-cv-1952-T-30EAJ (M.D. Fla.) (Doc. 179) |
| P | Complaint, *WellCare Health Plans, Inc., v. Behrens, et al.*, No. 10-CA-021335 (Fla. 13th Cir. Ct.) |
| Q | Amended Complaint, *WellCare Health Plans, Inc. v. Farha*, Nos. 07-015349, 07-015846 (Fla. 13th Cir. Ct.) |
| R | Motion to Dismiss, *Eastwood Enters., LLC v. Farha, et al.*, No. 8:07-cv-01940-VMC-EAJ (M.D. Fla. 2007) (Doc. 110) |

Respondents Todd S. Farha, Paul L. Behrens, and William L. Kale respectfully oppose the petition for a writ of mandamus filed by WellCare Health Plans, Inc. ("WellCare"). WellCare is not a "victim" under the Crime Victims' Rights Act (the "CVRA"), 18 U.S.C. § 3771, or the Mandatory Victims Restitution Act (the "MVRA"), 18 U.S.C. § 3663A, and thus lacks standing to seek restitution here. As the United States has acknowledged and the district court ruled, the only alleged "victim" in this case is the Florida Medicaid program administered by the Agency for Health Care Administration ("AHCA").

## INTRODUCTION

WellCare seeks a writ of mandamus directing the district court to deem it a "victim" that is entitled to restitution under the CVRA and MVRA. WellCare's petition, however, overlooks facts foreclosing that relief:

- Before trial, the United States designated ***WellCare an unindicted co-conspirator for the alleged fraud*** for which it now seeks restitution. *See* August 31, 2012 Letter from AUSAs Jay Trezevant and Cherie Krigsman to Defense Counsel. Ex. A ("Aug. 31, 2012 AUSA Letter").

- ***WellCare entered into a deferred prosecution agreement*** and ***accepted responsibility for the alleged fraud*** for which it now claims "victim" status. *See* May 5, 2009 Deferred Prosecution Agreement. Ex. B ("DPA").[1]

---

[1] Defendants do not concede that the allegations against WellCare or WellCare's admissions are true. Defendants deny that they engaged in criminal misconduct and are challenging their convictions in this Court. If Defendants' conduct were ultimately found to be criminal, however, the same would be true for WellCare. Moreover, WellCare's admissions may bind WellCare, but do not bind Defendants. Thus, while Defendants provide the Court with a factual record of the positions taken by WellCare and government counsel for the purpose of evaluating

- The fraud was allegedly perpetrated to **benefit WellCare directly** by allowing it to retain money that would otherwise be paid to AHCA. Ex. B (DPA Att. A ¶¶ 1, 21).

- **WellCare itself paid restitution** to the United States and Florida's AHCA as part of its resolution of the claims against it. Ex. B (DPA ¶ 6).

Having "functioned as the offenders' coconspirator"—indeed, the beneficiary—WellCare cannot be a "victim." *United States v. Alcatel-Lucent France, SA*, 688 F.3d 1301, 1304 (11th Cir.), *cert. denied*, 133 S. Ct. 806 (2012). "[A]n order of restitution from one co-conspirator to another" is not merely improper, but "fundamental" error. *United States v. Lazarenko*, 624 F.3d 1247, 1251 (9th Cir. 2010) (quotation marks omitted). In denying restitution, the district court expressly relied on both of those cases, stating that it was "persuaded particularly by *United States v. Lazarenko*, 624 F.3d 1247," and this Court's decision in "the *Alcatel-Lucent* case . . . 688 F.3d 1301." Ex. C (Sentencing Tr. 124 (May 19, 2014)). WellCare does not dispute that it admitted to fraud and that the government designated it as a co-conspirator. A co-conspirator who admits to committing an alleged fraud, enters into a deferred prosecution agreement for the alleged fraud, and pays restitution for it, is not a "victim" of that very same alleged fraud. Moreover, WellCare cannot be a victim because it was not directly harmed by the offense; it was the direct beneficiary on whose behalf the alleged offense was

---

WellCare's claims regarding restitution, nothing in this opposition should be deemed an admission by any of the Defendants.

committed. *Id.* And WellCare does not come close to satisfying the demanding requirements for mandamus relief in any event.

## BACKGROUND

### I.    STATUTORY BACKGROUND

This case arises out of the Medicaid program, a cooperative federal-state health care program. Florida's Agency for Health Care Administration ("AHCA") contracts with various Health Maintenance Organizations ("HMOs") for the provision of health care to Medicaid beneficiaries. The HMOs agree to provide a specified level of health care services to enrolled Medicaid recipients in return for monthly per-person "capitation" payments. *See* Fla. Stat. § 409.912. The HMO receives the same capitation payment regardless of the services each individual receives during the coverage period. *See* 42 C.F.R. § 438.2 (2007). If the cost of furnishing services is less than the capitation, the HMO profits; if the cost of services is greater, the HMO incurs the loss. One of the advantages of that model is that the HMO has an incentive to coordinate care, including preventative care, to maximize the likelihood of success. *See* 1993 Fla. Laws, ch. 93-129, § 50.[2]

In 2002, the Florida Legislature enacted what is now known as the "80/20 Amendment" relating to contracts for the provision of comprehensive "behavioral

---

[2] Previously, Florida's Medicaid program operated on a fee-for-service basis, paying a specified fee for each covered service or procedure provided. In the 1990s, the Florida Legislature began transitioning to a managed-care system.

health services."  The 80/20 Amendment states that "all contracts issued pursuant to this paragraph must require 80 percent of the capitation paid to the managed care plan, including health maintenance organizations, to be expended for the provision of behavioral health care services."  Fla. Stat. § 409.912(4)(b).  If "the managed care plan expends less than 80 percent of the capitation paid pursuant to this paragraph for the provision of behavioral health care services, the difference shall be returned to the agency."  *Id.*  For example, if a health care plan expends 75% of its annual capitation for the provision of behavioral health services, the 80/20 Amendment would require the plan to return 5% of the premium to AHCA.  AHCA never issued any rules or regulations specifying how plans should calculate and report their expenditures for the provision of behavioral health services.

## II.    FACTUAL BACKGROUND

### A.    The Conduct at Issue

The government claims that WellCare defrauded AHCA in connection with the Medicaid program by not properly reporting its expenditures for the provision of behavioral health services in annual filings with AHCA.  The government claimed (among other things) that WellCare improperly included amounts paid to Harmony Behavioral Health—a certified "Behavioral Health Organization" or "BHO"[3]—as sums expended for the provision of behavioral health services.  Ex. D

---

[3] A BHO "is a specialized managed care company that focuses on providing

(Indictment ¶ 26(a)).   Harmony was a subsidiary of WellCare; the amounts WellCare paid Harmony were set by a contract between them and approved by the Florida Department of Insurance.  Ex. F (52 Tr. 4/8/13 P.M. at 31:19-25, 32:8-11).  The government's position was that, when calculating the amounts expended for the provision of behavioral health services, WellCare should have counted only the amounts Harmony paid to "frontline" providers and could not include sums WellCare paid to Harmony.  Ex. D (Indictment ¶ 26(a)(ii)).

### B.   WellCare Enters into a Deferred Prosecution Agreement and Stipulates That It Conspired To and Did Defraud AHCA

On October 24, 2007, over 200 law-enforcement officials raided WellCare's headquarters.  Ex. E (4 Tr. 2/26/13 P.M. at 48:22-49:11, 69:1-16).   On May 5, 2009, WellCare entered into a deferred prosecution agreement ("DPA") with the U.S. Attorney's Office for the Middle District of Florida and the Florida Attorney General's Office.  *See* Ex. B (DPA ¶ 1).  The United States and Florida "agreed to permit [WellCare] to enter into" the DPA "in lieu of the[ir] pursuit of a criminal conviction."  *Id.* ¶ 2.  As part of the DPA, WellCare was required to "accept and acknowledge responsibility" for conduct "giving rise" to the DPA.  *Id.*  In return,

---

services to people who have behavioral health problems."  Ex. G (74 Tr. 4/29/13 P.M. at 34:21-24).  BHOs "establish networks of providers" and "work directly with patients" by providing case management services and coordination of care. *Id.* at 39:9-15.  Because behavioral health is "complex" and "outside the normal flow of medical care" that HMOs generally deal with, HMOs often subcontract with BHOs for their "specialized expertise." *Id.* at 34:24-35:7.  Contracting BHOs are often affiliated with the HMO.  Ex. H (51 Tr. 4/8/13 A.M. at 92:13-17).

the United States agreed to dismiss the Information it filed against WellCare and not bring WellCare to trial. *Id.* ¶ 21.

The DPA included an agreed-upon "Statement of Facts." Ex. B (DPA Att. A). The Statement of Facts specified that "WELLCARE knowingly and willfully conspired, confederated and agreed with others" to defraud AHCA. *Id.* ¶ 1. WellCare stated that it "us[ed] a wholly-owned entity named Harmony Behavioral Health, Inc. . . . to conceal and falsely and fraudulently inflate" its true behavioral health care expenses. *Id.* ¶ 21(a)(iii). WellCare stipulated that its "former officers and employees, acting within the scope of their duties and authorities, would and did engage in meetings and other conduct in a concerted and organized effort to conceal and cover-up the false and fraudulent nature of [WellCare's] various expenditure information." *Id.* ¶ 21(c).

WellCare agreed to pay $80 million in restitution and civil forfeiture. Ex. B (DPA ¶ 6). It agreed to "make no claim upon such monies." *Id.* ¶ 16(d). And it "agree[d] that it will not, . . . directly or indirectly, . . . contradict[ ] or undermin[e] any statement or assertion made in [the DPA] or the Statement of Facts." *Id.* ¶ 8(a). Counsel who signed WellCare's mandamus petition signed the DPA.

WellCare acknowledged in the DPA that the government would be filing an Information "charging [WellCare] with conspiracy to commit health care fraud against the Florida Medicaid program in [WellCare's] reporting of expenditures

under its 80/20 community behavioral health contracts." Ex. B (DPA ¶ 4). That

Information, in turn, alleged that "[b]eginning in or about mid-2002, and continu-

ing through at least October 2007," WellCare "knowingly and willfully did com-

bine, conspire, confederate and agree with others to execute and attempt to execute

a scheme and artifice to defraud" the Florida Medicaid program. Ex. I (Informa-

tion ¶ 1). The Information further charged that WellCare made "materially false

pretenses, representations, and promises . . . in connection with the delivery of and

payment for health care benefits, items, and services." *Id.*; *see also id.* ¶ 25(a).

### C.    The Indictment, Trial, and Verdicts

On March 2, 2011, a grand jury returned an 11-count Indictment against

several former WellCare executives—including Todd Farha, former President,

CEO, and Chairman of the Board; Paul Behrens, former Senior Vice President and

CFO; Dr. William Kale, former Vice President of Harmony; and Peter Clay,

former Vice President of Medical Economics. Ex. D (Indictment ¶¶ 20-24).

According to the Indictment, WellCare "falsely and fraudulently includ[ed]"

expenses that could not be counted, and "us[ed] a wholly-owned entity named

HARMONY to . . . falsely and fraudulently increase the expenditures reported to

AHCA." *Id.* ¶ 26(a)(i)-(ii).

The Indictment charged Defendants with making false statements relating to

a health care matter in violation of 18 U.S.C. § 1035. Defendants, it alleged, had

caused two WellCare subsidiaries—Staywell Health Plan of Florida ("Staywell"), and HealthEase of Florida ("HealthEase")—to submit false expenditure information to AHCA for Calendar Years 2005 (Counts 2-3) and 2006 (Counts 4-5). Ex. D (Indictment ¶ 28). Based on those same submissions to AHCA, the Indictment charged Defendants with health care fraud in violation of 18 U.S.C. § 1347 for Calendar Years 2005 (Counts 6-7) and 2006 (Counts 8-9). *Id.* ¶¶ 29-32. The Indictment also charged Defendants with conspiracy. *Id.* ¶ 26 (Count 1). The government designated WellCare as an unindicted co-conspirator. *See* Ex. A (Aug. 31, 2012 AUSA Letter).

Nearly a month after the case was submitted to the jury for deliberations—and after deadlocking and being given an *Allen* charge—the jury returned a verdict. The jury hung on the conspiracy charge. With respect to the counts based on the Calendar Year 2005 submissions to AHCA, the jury acquitted all Defendants of making false statements, and either acquitted or hung on the two health care fraud counts. The jury found Messrs. Farha, Behrens, and Kale guilty of two counts of health care fraud in connection with the Calendar Year 2006 80/20 submissions, but reached no verdict as to Mr. Clay. On the false statement charges relating to 2006 submissions, the jury found Mr. Farha not guilty, reached no verdict for Messrs. Kale and Clay, but convicted Mr. Behrens. It convicted Mr. Clay on two separate false statement charges pursuant to 18 U.S.C. § 1001.

8

### D.    The District Court Rejects WellCare's Effort To Recast Itself as a Victim

The government is required by statute "to see that crime *victims* are notified." 18 U.S.C. § 3771(c)(1) (emphasis added).  After the jury's verdict, however, the government chose not to notify WellCare that it was a "victim" entitled to restitution.  To the contrary, consistent with its identification of WellCare as a co-conspirator and criminal participant, at sentencing the government continued to insist that, through the fraud, WellCare had retained over $23 million that it should have refunded to AHCA.  Ex. J (Dist. Ct. Dkt. 798 at 13-14).  When asked at sentencing whether "there [was] a representative of the victim present," the government identified a representative of AHCA and no one else, although WellCare's lawyers were in the courtroom.  Ex. C (Sentencing Tr. 86).

The Probation Office likewise did not treat WellCare as a "victim."  In its Sentencing Report, the Probation Office identified AHCA, not WellCare, as "the victim."  *See, e.g.*, Behrens PSR ¶ 13.  And in the "Victim Impact" section of the PSR, the Probation Office stated that "restitution is not an issue" because WellCare "has paid this restitution in full."  *Id.* ¶ 72.

One month before sentencing, WellCare moved for recognition as a crime "victim" under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, and the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A.  Ex. K (Dist. Ct. Dkt. 841).  Defendants opposed that request.  *See* Ex. L (Dist. Ct. Dkt.

9

852).  Defendants emphasized that "WellCare stands before the Court as an admitted 'co-conspirator' to the charges here, and thus not a 'victim' entitled to restitution under the MVRA."  *Id.* at 9.  As support, Defendants relied in particular on two cases, *United States v. Alcatel-Lucent France, S.A.*, 688 F.3d 1301 (11th Cir. 2012), and *United States v. Lazarenko*, 624 F.3d 1247 (9th Cir. 2010). *Id.* at 9-11.

The district court denied WellCare's restitution motion, finding that it was not a "victim" under the CVRA and MVRA.  Ex. C (Sentencing Tr. 124).  The district court first stated that a "victim" under the MVRA and CVRA meant "a person directly and proximately harmed as a result of the commission of a federal offense."  *Id.*  In the court's view, WellCare was not a "victim" because, while it may have "been harmed collaterally," it was not harmed "directly." *Id.*

The district court then stated:  "And I'm persuaded particularly by *United States vs. Lazarenko*, 624 F.3d 1247, . . . and then the *Alcatel-Lucent France* case . . . 688 F.3d 1301," Ex. C (Sentencing Tr. 124), the leading cases cited by the defense for the proposition that co-conspirators and other participants in the offense are not victims.  In *Alcatel-Lucent*, this Court affirmed the district court's conclusion that the petitioner was not a "victim" entitled to restitution because the district court "'did not clearly err in finding that [the company] actually functioned as the offenders' coconspirator.'"  688 F.3d at 1304.  And in *Lazarenko*, the Ninth Circuit held that, "as a general rule, a participant in a crime cannot recover restitu-

10

tion." 624 F.3d at 1251. Relying on those two cases, the district court concluded the hearing by announcing that WellCare was not entitled to restitution.

WellCare's petition for a writ of mandamus followed.

## ARGUMENT

WellCare insists that it is entitled to a writ of mandamus directing the district court to deem it a "victim" of the offenses and enter restitution in its favor. That defies precedent. WellCare does not dispute the general rule that "a co-conspirator cannot recover restitution for crimes in which he or she participates." *United States v. Lazarenko*, 624 F.3d 1247, 1252 (9th Cir. 2010); *see United States v. Alcatel-Lucent France SA*, 688 F.3d 1301, 1304 (11th Cir. 2012) (rejecting restitution where corporation "functioned as [a] coconspirator"). Here, WellCare's DPA and agreed-upon fact statement stipulate that WellCare committed the offenses of conviction. The government, moreover, designated WellCare an unindicted co-conspirator before trial. By sentencing, the government was insisting that the alleged fraud had permitted WellCare to retain millions of dollars it should have returned to AHCA. And WellCare paid restitution to the alleged victim. WellCare cannot reconcile its current claim that it was a victim of the offenses entitled to restitution with the fact that it paid restitution to AHCA for the same offenses.

In its petition, WellCare proceeds as if the district court held only that its injuries were insufficiently "direct" to entitle it to victim status, and then takes issue

11

with that conclusion.  That is doubly wrong:  WellCare simply ignores the district court's statement that it was "persuaded" by the "reasoning" of *Lazarenko* and *Alcatel-Lucent,* cases holding that co-conspirators and participants in the offense are not "victims" under the restitution statutes (directness or indirectness of injury aside).  Ex. C (Sentencing Tr. 124).  Having ignored half of what the district court said, WellCare's petition should be summarily rejected.  And even with respect to the portion of the district court's decision that WellCare does address, its arguments fail.  WellCare's arguments would read the term "directly" out of the statute.

In any event, WellCare cannot meet the exacting requirements for mandamus.  The government may raise any denial of a victim's right on appeal, but private parties like WellCare must seek review by "petition[ing] . . . for a writ of mandamus."  18 U.S.C. § 3771(d)(3).  When Congress used the term "mandamus," it incorporated the settled understanding that mandamus is a "drastic" remedy available "only in extraordinary situations."  *In re Moody*, — F.3d —, No. 13-12657, 2014 WL 948510, at *6 (11th Cir. Mar. 12, 2014).  The "main question to be resolved is whether the district judge clearly abused his discretion."  *United States v. Fernandez-Toledo*, 737 F.2d 912, 919 (11th Cir. 1984).  And "the party seeking mandamus has the burden of demonstrating that his right to the writ is ***clear and indisputable***."  *Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1263 (11th Cir. 2011) (emphasis added).  WellCare cannot meet that standard—or any other

12

conceivable standard—here.

## I. PARTICIPANTS IN THE OFFENSE LIKE WELLCARE ARE NOT "VICTIMS" ENTITLED TO RESTITUTION

<u>Standard of Review</u>:  To obtain mandamus, WellCare must show an abuse of discretion and an indisputable right to the writ.  *Fernandez-Toledo*, 737 F.2d at 919; *Serrano*, 655 F.3d at 1263; p. 12, *supra*.  And even if the traditional mandamus standard did not apply, WellCare still could not prevail.  Pp. 29-30, *infra*.

### A. Participants, Including Co-Conspirators, Are Not "Victims"

WellCare's claim for mandamus is foreclosed by the holdings of *Alcatel-Lucent* and *Lazarenko*—cases the district court explicitly relied upon, but WellCare all but ignores.  In *Alcatel-Lucent*, Alcatel-Lucent entered into a DPA to resolve violations of the Foreign Corrupt Practices Act.  688 F.3d at 1303.  In the DPA, Alcatel-Lucent admitted that it had bribed employees of a Costa Rican company responsible for awarding telecommunications contracts.  *Id.*  The district court refused to allow the Costa Rican company to claim "victim" status under the MVRA because it had admitted being a co-conspirator with Alcatel-Lucent and had engaged in wrongful conduct through its employees.  *Id.* at 1304.  The Costa Rican company sought a writ of mandamus, but this Court denied the petition because the district court "'did not clearly err in finding that [the company] actually functioned as the offenders' coconspirator.'"  *Id.*

In *Lazarenko*, the Ninth Circuit held that, in general, "a co-conspirator

13

cannot recover restitution for crimes in which he or she participates." 624 F.3d at 1251. Instead, "as a general rule, a participant in a crime cannot recover restitution." *Id.*; *see id.* ("improper to consider a participant to a crime as a victim of the crime"). In that case, the defendant was convicted of money laundering and conspiracy; the district court then awarded restitution to a co-conspirator who was "both a victim" of and a "participant" in money laundering. *Id.* at 1250-52. The Ninth Circuit reversed. The court agreed with the Second Circuit that "an order of restitution to a co-conspirator is a 'fundamental' error that 'adversely reflect[s] on the public reputation of the judicial proceedings.'" *Id.* at 1252 (quoting *United States v. Reifler*, 446 F.3d 65, 127 (2d Cir. 2006)).[4]

Those conclusions conform with statutory text and ordinary meaning alike. The CVRA is clear: "***A person accused*** of the crime ***may not obtain any form of relief*** under this chapter." 18 U.S.C. § 3771(d)(1) (emphasis added). And in ordinary parlance, the term "victim" simply does not include the person who committed the offense.

### B. WellCare Is Not a "Victim" Because It Was Not Merely Accused of, But Admitted Committing, the Alleged Offense

Before this Court, WellCare does not deny that co-conspirators and criminal

---

[4] Other courts have reached the same conclusion. *See United States v. Archer*, 671 F.3d 149, 171 (2d Cir. 2011) (discussing "the well-established rule that cocon-spirators, who, by definition, know of the scheme, are not victims and may not receive restitution"); *In re: Bankruptcy Estate of AGS*, No. 14-1296, 2014 WL 1329357, at *2 (4th Cir. Apr. 4, 2014).

participants are not victims entitled to restitution. And it abandons any claim that it was not a co-conspirator that participated in the offense, with good reason.

First, WellCare's DPA and associated fact statement, which it signed with the U.S. Attorney's Office and the Florida Attorney General's Office, concede that "***WELLCARE knowingly and willfully conspired, confederated and agreed with others***" to defraud AHCA. Ex. B (DPA, Att. A ¶ 1) (emphasis added). WellCare likewise stated that it "us[ed] a wholly-owned entity named Harmony Behavioral Health, Inc. . . . ***to conceal and falsely and fraudulently inflate***" Staywell's and HealthEase's true behavioral health care expenses. *Id.* ¶ 21(a)(iii) (emphasis added). In short, WellCare was not merely "accused of the crime." 18 U.S.C. § 3771(d)(1). WellCare stipulated to committing it. As the putative beneficiary of the offense, which was allegedly designed to allow WellCare to keep funds it would otherwise have to pay over to AHCA, WellCare is ineligible for restitution.

The government's position confirms that WellCare is not a "victim." Before trial, the government designated WellCare an unindicted co-conspirator, not a "victim." *See* Ex. A (Aug. 31, 2012 AUSA Letter). At trial, the government never asserted that WellCare was a "victim"; to the contrary, the government argued that the "WellCare HMOs submitted fraudulent expenditure data to AHCA." Ex. M (3 Tr. 2/26/13 A.M. at 38:16-22). WellCare's claim to victimhood is also belied by the government's post-trial conduct. By statute, the government "shall make" its

15

"best efforts to see that crime victims are notified" of hearings and the right to seek restitution.  18 U.S.C. § 3771(c)(1).  The government provided no such notice to WellCare.  At sentencing, the government identified AHCA, not WellCare, as the only "victim" present.  Ex. C (Sentencing Tr. 86).  And the Probation Office's presentence report identified AHCA—not WellCare—as "the victim."  *See, e.g.*, Behrens PSR ¶ 13.  Indeed, it stated that, because WellCare had already made restitution to AHCA, "restitution is not an issue" anymore.  *Id.* ¶ 72.

### C.    Contrary Arguments Are Foreclosed

Rather than grapple with the cases cited by the district court (*Lazarenko* and *Lucent-Alcatel*) that preclude co-conspirators and other offense participants from receiving restitution, WellCare simply pretends that they were not part of the decision below.   But the district court did not stop after analyzing whether WellCare's injuries were direct or collateral.   The court continued:   "***And*** I'm persuaded particularly by *United States vs. Lazarenko*, 624 F.3d 1247, . . . and then the *Alcatel-Lucent France* case . . . 688 F.3d 1301, [which] uses similar reason-ing."  Ex. C (Sentencing Tr. 124) (emphasis added).   Those are the cases that squarely hold that co-conspirators and criminal participants are not "victims."  Those are the cases Defendants invoked in arguing at length that WellCare, because it committed the alleged offense, cannot be a "victim."  *See* Ex. L (Dist. Ct. Dkt. 852 at 9-11).   And WellCare urges (Pet. 25-26) that those cases have

16

nothing to do with the distinction between "direct" and "collateral" harm, only whether participants in the offense can be "victims."

WellCare's only comment on *Lazarenko* and *Alcatel-Lucent* in its mandamus petition is the claim that they "contain no discussion regarding what constitutes direct rather than collateral harm." Pet. 25. That is irrelevant. As WellCare concedes, those cases "analyzed whether actors who participated in the underlying criminal conduct can obtain restitution." *Id.* at 26. WellCare never addresses why the answer to that question—"no"—does not preclude mandamus here.

To prevail in this Court, WellCare must show that "***every*** stated ground for the judgment against [it] is incorrect." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (emphasis added). Because WellCare has not challenged one of the district court's grounds for denying restitution, it has "abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Id.* Nor can WellCare attack that ground for the first time in reply, *id.* at 682-83, particularly on mandamus, where WellCare must show a "clear and indisputable" entitlement to relief, *Serrano*, 655 F.3d at 1263.

In any event, WellCare's theories lack merit. In district court, WellCare insisted that it could be a "victim" because Defendants, rather than it, allegedly committed the fraud. That assertion defies not only the admissions catalogued above, but over a century of precedent holding the acts and intent of a corporation

17

and its agents to be one and the same. *See N.Y. Cent. & Hudson River R.R. Co. v. United States*, 212 U.S. 481, 495 (1909); *United States v. A & P Trucking Co.*, 358 U.S. 121, 125 (1958).

Because a corporation acts through its officers and employees, the law attributes the acts and omissions of corporate agents to the corporation so long as they are committed within the scope of their employment and for the benefit of the corporation. *See, e.g.*, *United States v. Gold*, 743 F.2d 800, 822-23 (11th Cir. 1984). WellCare has conceded that Defendants were "acting within the scope of their duties and authorities." Ex. B (DPA Att. A ¶ 21(c)). And they clearly undertook their actions for WellCare's benefit. It was WellCare that stood to retain, according to the government, millions of dollars that would otherwise be handed over to AHCA. At sentencing, the district court expressly acknowledged that any purported gains from the alleged fraud never "went directly into the pockets of these individuals." Ex. C (Sentencing Tr. 90).

Nor can WellCare claim that Defendants were isolated actors within the company. WellCare itself was identified as a criminal participant; it conceded culpability; and the government named WellCare's subsidiaries Staywell, Health-Ease, and Harmony as co-conspirators, along with eight WellCare employees. *See* Ex. A (Aug. 31, 2012 AUSA Letter). Any effort to separate WellCare's Board from the conduct is doomed by the fact that one of the charged defendants, Mr.

18

Farha, was Chairman of the Board.  It is thus irrelevant that the extent of other Board members' knowledge could be a disputed fact, and WellCare cites no evidence that Harmony's use for 80/20 purposes was hidden from the Board.

## II.    THE DISTRICT COURT PROPERLY RULED THAT WELLCARE HAD NOT ESTABLISHED THE REQUISITE DIRECT INJURY

### A.    The Offense Conduct Did Not "Directly" Cause WellCare's Asserted Harms

The district court likewise properly concluded that WellCare is not a victim because it was not "directly and proximately" harmed by the offense as required by the CVRA and MVRA, 18 U.S.C. §§ 3663A(a)(2), 3771(e).  Under those statutes, a party must "show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal connection between the conduct and the loss is not too attenuated (either factually or temporally)."  *United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir. 2007). In this case, the district court properly ruled that any harm to WellCare occurred not "directly," but only "collaterally."  Ex. C (Sentencing Tr. 124).

WellCare insists that it was directly harmed, for example, because it had to restate its earnings in SEC filings.  Pet. 5.  But that was not a "direct" consequence of the alleged fraud.  The direct consequence of the alleged fraud was that WellCare was able to retain more money.  Restating earnings—years later—is at most a collateral consequence.

19

WellCare, moreover, fails to establish even ordinary, actual causation—that a particular harm would not have occurred "but for" the conduct underlying the offense of conviction—much less that it was "directly" harmed by the offense. *See Burrage v. United States*, 134 S. Ct. 881, 888 (2014) (but-for or actual causation present only if "other factors alone would not have" produced the result). Well-Care seeks to lay the costs of restating its earnings, and the special committee investigation, at Defendants' feet. Pet. 5-6, 8, 26-27. As Defendants explained below, however, both "the [r]estatement and ongoing Special Committee investigation . . . were motivated by issues extending beyond the CY2006 80/20 submissions at issue here (or even 80/20 more generally)." Ex. N (Dist. Ct. Dkt. 875 at 14). "WellCare's [r]estatement, for example, was explicitly motivated by refunds made to 'Illinois Medicaid' and 'Florida Healthy Kids,' in addition to the 80/20 refund to AHCA, as well as a wide-ranging internal investigation." *Id.* Even the 200-plus agent raid was motivated by a host of factors beyond the 80/20 filings. *Id.* at 9. For those reasons, the government never showed but-for causation for a securities violation because it "failed to prove that those 'other factors alone would not have' caused an investigation [and] a restatement," or even the raid. Ex. N (Dist. Ct. Dkt. 875 at 14). For the same reasons, WellCare has failed to prove but-for causation here. WellCare offers no argument—or evidence—to the contrary.

20

The same defects plague WellCare's assertion that the offenses of conviction caused WellCare to address and settle civil litigation.  Pet. 8-9, 27.  The investigations were sparked by "various related *qui tam* actions filed in multiple federal districts and states stretching well beyond the Florida Medicaid behavioral health program at issue here."  Ex. N (Dist. Ct. Dkt. 875 at 17).  One of the *qui tam* relators—whose complaint triggered the raid and investigation here—"ultimately ***asserted 20 counts*** on behalf of the federal government and seven States, ***with only four counts*** pertaining to the WellCare Plans' 80/20 submissions."  *Id.* (emphasis added).  And WellCare concedes that the civil lawsuits "made a range of allegations."  Pet. 9.  Again, WellCare offers no evidence that the offenses of conviction were the but-for cause of its claimed harm.  Indeed, while the bulk of the restitution WellCare seeks is for settling a class action alleging securities violations, the district court correctly found that this is not a case in which "defendants intentionally manipulated the numbers submitted to the SEC to increase the stock price to commit a market fraud."  Ex. C (Sentencing Tr. 25).

WellCare's claim for restitution with respect to Defendants' compensation epitomizes its disregard for the requirement of but-for causation.  *See* Pet. 12.  WellCare never suggests that, absent the conduct that resulted in Defendants' convictions, it would not have paid the Defendants their salaries.  Nor does WellCare suggest that the conduct caused it to pay Defendants more than it otherwise

21

would have.  And the district court never found that WellCare would have paid

Defendants any differently.  That claim too fails to establish but-for causation.

Moreover, because all those harms occurred through a chain of causation

that requires so many steps, they are too removed from the offenses of conviction

to constitute "direct" harm.  Misrepresentations to AHCA may directly result in

underpayments to AHCA, but they do not directly lead to the assorted securities

and civil-lawsuit costs WellCare identifies here.  Particularly where the purported

harm follows in litigation against it, a participant in the alleged offense like

WellCare is not directly injured by the criminal activity, but rather by the collateral

consequences of having itself participated in the offense conduct.

## B.    The Cases Invoked by WellCare Are Inapplicable

None of the cases WellCare cites applies here.  Pet. 18-25.  In *United States*

*v. Cummings*, 189 F. Supp. 2d 67 (S.D.N.Y. 2002), the defendant was convicted of

securities fraud by "engag[ing] in a series of internal manipulations of Aurora's

financial records" to conceal the company's dire financial situation, "directly

harm[ing]" the company and its shareholders.  *Id.* at 69, 75-76.  That bears no

relationship to the conduct alleged here, which allegedly improved WellCare's

financial situation by decreasing the amount it had to pay AHCA.  The harm in

*Cummings*, moreover, was at least arguably "direct," as one could argue that the

need to file corrective documents with the SEC "directly" results from the manipu-

lation of financial records and false SEC filings.  But the offense at issue here was not securities fraud, and it did not involve false SEC filings:  "The offense in this case is the false statements to AHCA," not "violations of the securities laws."  Ex. C (Sentencing Tr. 25).  Whatever impact the alleged fraud on AHCA had on SEC filings, it was surely "collateral" as opposed to "direct."[5]

WellCare's reliance on *United States v. Skowron*, 839 F. Supp. 2d 740 (S.D.N.Y. 2012), *aff'd*, 529 F. App'x 71 (2d Cir. 2013), falters for the same reason. That case involved insider trading; the defendant deceived his employer, Morgan Stanley.  *Id.* at 745.  The court explained that the defendant's "lies to Morgan Stanley and its investigators facilitated his deception of the SEC and were integral to that deception."  *Id.*  And in *United States v. Gupta*, 925 F. Supp. 2d 581 (S.D.N.Y. 2013), the court stated that "[p]rosecution of insider trading therefore proceeds, as in this case, on one or more theories *of defrauding the institution (or its shareholders) that owned the information*."  *Id.* at 586 (emphasis added).  This case is not one in which Defendants took information belonging to WellCare and used it

---

[5] *United States v. Piggie*, 303 F.3d 923 (8th Cir. 2002), is even further afield.  That case involved a defendant's scheme to pay high school basketball players to play in a traveling league.  *Id.* at 924.  Some of the players later represented to certain universities that they had never been paid to play basketball, and therefore remained eligible for collegiate sports.  *Id.* at 925.  But when the NCAA found out about the players' previous compensation, those universities became subject to penalties, including the loss of scholarships.  *Id.*  Restitution was appropriate because the universities' losses were "caused by the specific conduct that [was] the basis for the offense of conviction," which had nothing to do with the universities' own conduct.  *Id.* at 928.  That is not the case here.

for their personal gain or to defraud WellCare.  To the contrary, the district court found that the proceeds flowed directly to WellCare.  *See* p. 18, *supra*.

More fundamentally, not one of WellCare's cases involves a corporation that: (1) entered into a DPA; (2) was charged in an Information for the same conduct as the defendants; (3) admitted to wrongdoing, paid restitution, and forfeited alleged unlawful proceeds; and (4) was designated by prosecutors as a co-conspirator.  Although WellCare cites this Court's statement that "a party may qualify as a victim, even though it may not have been the target of the crime, as long as it suffers harm as a result of the crime's commission," Pet. 18 (quoting *In re Stewart*, 552 F.3d 1285, 1289 (11th Cir. 2008)), that principle has no bearing where, as here, the purported victim was an ***admitted participant*** and the intended beneficiary of the offense of conviction, *see Alcatel-Lucent*, 688 F.3d at 1304; *Lazarenko*, 624 F.3d at 1252.  WellCare cites ***not one*** case where a court has held that a corporation, under comparable circumstances, was deemed a "victim."  The district court here can hardly be said to have "clearly" and "indisputably" erred by refusing to contrive an exception to the "general rule" that "a participant in a crime cannot recover restitution."  *Lazarenko*, 624 F.3d at 1252; *see* Ex. C (Sentencing Tr. 124) (district court "persuaded" by *Lazarenko*).

## III.  WELLCARE CANNOT ESTABLISH ENTITLEMENT TO RELIEF UNDER MANDAMUS OR ANY OTHER STANDARD

Mandamus traditionally requires not merely an "abuse of discretion" and "a

24

clear and indisputable" right to the writ. *Fernandez-Toledo*, 737 F.2d at 919; *Serrano*, 655 F.3d at 1263. It also requires "injustice or irreparable injury." *In re BellSouth Corp.*, 334 F.3d 941, 954 (11th Cir. 2003). WellCare makes none of those showings. Although WellCare argues that the traditional mandamus standard does not apply, it is mistaken. The petition, moreover, fails under any standard.

### A.    The Traditional Mandamus Standard Applies

As the United States has explained, "in enacting the CVRA, Congress created an independent cause of action against the district judge that must be entertained as a traditional petition for a writ of mandamus and thus should be 'governed by traditional mandamus standards, not by ordinary appellate standards.'" *Stewart*, 641 F.3d at 1274 (quoting U.S. brief). Consistent with that analysis, court after court has concluded that parties seeking mandamus relief under the CVRA must meet the traditional mandamus standards.[6]

If Congress had intended ordinary appellate rather than mandamus standards to apply, it "could have drafted the CVRA to provide for 'immediate appellate review' or 'interlocutory appellate review,' something it has done many times." *Antrobus*, 519 F.3d at 1124. It did not. "Instead, it authorized and made use of the term 'mandamus.'" *Id.* Because courts "assume that Congress knows the law and

---

[6] *See United States v. Monzel*, 641 F.3d 528, 532-33 (D.C. Cir. 2011); *In re Acker*, 596 F.3d 370, 372 (6th Cir. 2010); *In re Dean*, 527 F.3d 391, 394 (5th Cir. 2008); *In re Antrobus*, 519 F.3d 1123, 1125 (10th Cir. 2008).

25

legislates in light of federal court precedent," petitions under the CVRA should be reviewed "under traditional mandamus standards." *Id.*

WellCare does not acknowledge that line of precedent. Instead, it cites only this Court's unpublished decision in *In re Instituto Costarricense di Electricidad*, No. 11-12707 (11th Cir. June 17, 2011), and *In re Stewart*, 641 F.3d 1271 (11th Cir. 2011). Pet. 14.[7] But an unpublished decision is not binding, *Moore v. Barnhart*, 405 F.3d 1208, 1211 n.3 (11th Cir. 2005), and *Instituto Costarricense* shows why the petition must fail in any event. In that case, the Court denied mandamus in part because the petitioner "actually functioned as the offenders' coconspirator." Order at 2, *Instituto Costarricense*, No. 11-12707. The Court also quoted *Lazarenko* for the proposition that, "as a general rule, a participant in a crime cannot recover restitution." *Id.* *Stewart*, moreover, neither precludes the Court from applying the traditional mandamus standard nor endorses a lesser standard.[8]

## B.    WellCare Cannot Establish the Remaining Mandamus Factors

As discussed above, mandamus should be denied because WellCare has not

---

[7] WellCare does not address cases that depart from the traditional mandamus standard, either. *See Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1017-18 (9th Cir. 2006); *In re W.R. Huff Asset Mgmt. Co.*, 409 F.3d 555, 563-64 (2d Cir. 2005); *In re Walsh*, 229 F. App'x 58, 60 (3d Cir. 2007).

[8] Acknowledging a division of authority—as well as differing interpretations of the panel's own prior ruling—this Court stated: "In the matter at hand, it makes no difference whether we treat it as an appeal of a district court judgment . . . or an original proceeding for a writ of mandamus." 641 F.3d at 1274-75. This Court thus remains free to conclude—consistent with Congress's decision to use to the term "mandamus"—that traditional mandamus standards must be met.

established a "clear and indisputable" right to relief. *Serrano*, 655 F.3d at 1263. *See* pp. 11-24, *supra*. But the remaining factors also preclude mandamus.

### 1.    WellCare Has Failed To Establish Injustice

For over a century, the writ of mandamus has been "a remedy that courts apply to prevent a failure of justice, and ***never to a suitor with unclean hands***." *U.S. ex rel. Stevens v. Richards*, 33 App. D.C. 410, 419 (D.C. Cir. 1909) (emphasis added); *see also In re Cargill, Inc.*, 66 F.3d 1256, 1262 n.7 (1st Cir. 1995). It would be hard to imagine a more obvious case of unclean hands than a criminal participant seeking restitution from other defendants. WellCare has thus not shown that the extraordinary exercise of the writ is appropriate here.

### 2.    WellCare Has Failed To Demonstrate Irreparable Injury

WellCare's petition should also be denied because it possesses—and is pursuing—alternative, adequate remedies. *Fernandez-Toledo*, 737 F.2d at 919. WellCare is pursuing civil actions against Messrs. Farha and Behrens in the same court below (currently stayed). *See* Ex. O (Order Granting Motion To Realign WellCare as Plaintiff, *WellCare Health Plans, Inc., v. Todd S. Farha, et al.*, Case No. 8:07-cv-1952-T-30EAJ (M.D. Fla.) (Doc. 179)). WellCare likewise filed civil suits against Messrs. Farha and Behrens in state court (also stayed). Ex. P (Complaint, *WellCare Health Plans, Inc., v. Behrens, et al.*, No. 10-CA-021335 (Fla. 13th Cir. Ct.)); Ex. Q (Amended Complaint, *WellCare Health Plans, Inc. v.*

*Farha*, Nos. 07-015349, 07-015846 (Fla. 13th Cir. Ct.)).  Those cases involve claims for restitution virtually identical to what petitioner seeks here, as the district court recognized.  *See* Ex. C (Sentencing Tr. 125).[9]  Having chosen other adequate remedies, petitioner cannot show irreparable harm.

### 3.    Discretionary Factors Weigh Against Granting the Writ

The MVRA recognizes that, where complex factual issues will unduly complicate or prolong sentencing, restitution is inappropriate.  In particular, it states that its provisions regarding restitution

> shall not apply . . . if the court finds, from facts on the record, that . . . determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

18 U.S.C. § 3663A(c)(3)(B).  Congress "plainly intended that sentencing courts not become embroiled in intricate issues of proof."  *Reifler*, 446 F.3d at 136.  The district court recognized as much when it stated that it would "hear all these arguments again" anyway in the civil cases.  Ex. C (Sentencing Tr. 125).  WellCare asks that court to embroil itself in complex issues of causation (as well as securities

---

[9] WellCare seeks several hundred million dollars for most of the same costs sought here, including "tens of millions of dollars in attorneys', accountants' and consultants' fees and expenses to investigate" and restate its financials and "$200 million" for settlement of the class action.  Ex. P (Compl. ¶ 43).

laws) unsuited for a criminal sentencing.[10]  That alone is reason to deny the writ.

Nor can WellCare argue that mandamus is warranted because those proceedings will be costly.  "[T]he mere possibility that a litigant might have to re-litigate a case is not a sufficiently compelling interest to warrant immediate review." *BellSouth*, 334 F.3d at 954.

### C.    The Petition Does Not Meet the Standard for Ordinary Appellate Review

Even if this Court were to apply ordinary appellate review standards, the petition should still be denied.  In *Stewart*, the court explained that factual findings are subject to clear error review under both traditional mandamus and ordinary appellate standards.  641 F.3d at 1274-75.  That case addressed "whether the district court's finding that [the defendant's] crime did not cause the losses petitioners suffered [was] clearly erroneous." *Id.* at 1275.  Because "that finding [wa]s not clearly erroneous," the Court held that "the district court's decision

---

[10] WellCare's contradictory statements illustrate the complexity the district court would encounter.  For example, in its motion to dismiss the securities class action, WellCare contended that its "modest restatement" after investigation "never exceeded 1% of WellCare's revenue," that "WellCare's previously reported earnings trend remained largely unchanged," and that "defendants received all amounts owed them when they resigned" after WellCare's investigation.  Ex. R (Motion to Dismiss at 2, 18, 27, *Eastwood Enters., LLC v. Farha, et al.*, No. 8:07-cv-01940-VMC-EAJ (M.D. Fla. 2007) (Doc. 110)).  Now, however, WellCare urges that Defendants "materially inflated revenue"; that "the overall impact of the restatement was severe"; and that petitioner "would not have compensated Defendants if it had known of their health care fraud scheme."  Ex. K (Dist. Ct. Dkt. 841 at 5-6, 19).  Which story is true is the type of debate to be had in traditional litigation.

cannot be disturbed—regardless of whether we reach that conclusion as an appellate court reviewing a trial court's judgment or as an appellate court . . . entertaining a petition for a writ of mandamus in the first instance." *Id.*

In this case, the district court found that WellCare was not "directly and proximately" harmed by respondents.  Ex. C (Sentencing Tr. 124).  The court explained that, "had the money been embezzled from WellCare, that would have been a direct harm; but in this case, their losses [were] collateral." *Id.*  That determination is far from clearly erroneous; it is amply supported by the record.  WellCare ***admitted*** to fraudulently inflating expenses, *see* pp. 5-7, *supra*, which directly benefited WellCare because it allegedly retained significant sums that would otherwise be given to AHCA.  The government labeled WellCare an unindicted co-conspirator, and WellCare admitted to being a criminal participant.  *See* p. 8, *supra*.  WellCare nonetheless asks this Court to require the district court to be the first in the Nation to conclude that someone who admits fault in a DPA, is designated a co-conspirator, and makes restitution to the alleged victim must also be a "victim" and obtain restitution.  That request should be rejected.

## CONCLUSION

WellCare's petition for a writ of mandamus should be denied.

June 9, 2014

/s/ Jeffrey A. Lamken
Jeffrey A. Lamken
  *Counsel of Record (Behrens)*
MOLOLAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Ave., NW
Washington, D.C. 20037
202-556-2010
202-556-2001 (fax)
jlamken@mololamken.com

John F. Lauro (application pending)
LAURO LAW FIRM
101 East Kennedy Blvd., Suite 3100
Tampa, Florida 33602
813-222-8990
jlauro@laurolawfirm.com

Michael P. Matthews
Lauren L. Valiente
FOLEY & LARDNER LLP
100 N. Tampa Street, Suite 2700
Tampa, Florida 33602
813-225-4131
mmatthews@foley.com
lvaliente@foley.com

*Counsel for Paul L. Behrens*

Respectfully submitted,

/s/ Seth P. Waxman
Seth P. Waxman
  *Counsel of Record (Farha)*
WILMER CUTLER PICKERING HALE &
  DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
202-663-6000
202-663-6363 (fax)
seth.waxman@wilmerhale.com

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE &
  DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
212-937-7294
alan.schoenfeld@wilmerhale.com

Laura L. Vaughan
  (application pending)
GEORGE & TITUS, P.A.
100 S. Ashley Dr., Suite 1290
Tampa, Florida 33602
813-273-0355
lvaughan@georgeandtitus.com

L. Barrett Boss (application pending)
COZEN O'CONNOR
1627 I Street, NW, Suite 1100
Washington, D.C. 20006
202-912-4818
bboss@cozen.com

*Counsel for Todd S. Farha*

/s/ Stanley J. Reed
Stanley J. Reed
  *Counsel of Record (Kale)*
Lauri E. Cleary
James Bradford McCullough
LERCH, EARLY & BREWER, CHTD.
3 Bethesda Metro Center, Suite 460
Bethesda, Maryland 20814
301-657-0177
301-347-1796 (fax)
sjreed@lerchearly.com
lecleary@lerchearly.com
jbmccullough@lerchearly.com

Patrick M. Donahue
  (application pending)
WISE & DONAHUE
18 West Street
Annapolis, Maryland 21401
410-280-2023
pmd@wisedonahue.com

Larry Allen Nathans
NATHANS & BIDDLE, LLP
120 East Baltimore Street, Suite 1800
Baltimore, Maryland 21202
410-783-0272
nathans@nathanslaw.com

*Counsel for William L. Kale*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2014, I filed the foregoing Joint Opposition of Respondents Todd S. Farha, Paul L. Behrens, and William L. Kale with the Clerk via CM/ECF.

I further certify that I have caused a copy to be hand-delivered to the district court judge:

> Hon. James S. Moody, Jr.
> U.S. District Judge
> U.S. District Court for the Middle District of Florida
> 801 NORTH FLORIDA AVE
> TAMPA, FL 33602

I further certify that I have caused a copy to be served on counsel for all parties in this Court, and all parties in the district court proceeding, as follows:

Electronic service via CM/ECF:

> Gregory William Kehoe
> Greenberg Traurig, LLP
> 625 E TWIGGS ST STE 100
> TAMPA, FL 33602
> *Counsel for Petitioner WellCare Health Plans, Inc.*

> Seth Paul Waxman
> Wilmer Cutler Pickering Hale & Dorr, LLP
> 1875 PENNSYLVANIA AVE NW
> WASHINGTON, DC 20006
> *Counsel for Respondent Todd S. Farha*

> Alan E. Schoenfeld
> Wilmer Cutler Pickering Hale & Dorr, LLP
> 7 WORLD TRADE CENTER
> 250 GREENWICH ST
> NEW YORK, NY 10007
> *Counsel for Respondent Todd S. Farha*

Michael Patrick Matthews
Lauren Lisette Valiente
Foley & Lardner, LLP
100 N TAMPA ST STE 2700
TAMPA, FL 33602-5810
*Counsel for Respondent Paul L. Behrens*

Stanley James Reed
Lauri Elizabeth Cleary
James Bradford McCullough
Lerch Early & Brewer
3 BETHESDA METRO CTR STE 460
BETHESDA, MD 20814
*Counsel for Respondent William L. Kale*

Larry Allen Nathans
Nathans & Biddle LLP
120 E BALTIMORE ST STE 1800
BALTIMORE, MD 21202
*Counsel for Respondent William L. Kale*

Electronic service via e-mail upon written consent:

Lawrence Robbins
Mark Thomas Stancil
Robbins Russell Englert Orseck Untereiner & Sauber, LLP
lrobbins@robbinsrussell.com
mstancil@robbinsrussell.com
*Counsel for Peter E. Clay*

Morris Weinberg, Jr.
Zuckerman Spaeder, LLP
sweinberg@zuckerman.com
*Counsel for Thaddeus M.S. Bereday*

Gregory Robert Miller
Beggs & Lane, RLLP
grm@beggslane.com
*Counsel for Amici Curiae Law Professors and Practitioners*

Jay Gilchrist Trezevant
Cherie Krigsman
Karin Bethany Hoppmann
Natalie Hirt Adams
David Rhodes
John J. Bowers
John A. Michelich
jay.trezevant@usdoj.gov
cherie.krigsman@usdoj.gov
karin.hoppmann@usdoj.gov
natalie.adams@usdoj.gov
david.rhodes@usdoj.gov
john.bowers@usdoj.gov
john.michelich@usdoj.gov
*Counsel for United States of America*

Hard-copy service via Federal Express overnight delivery:

Pam Bondi
Stephanie Allison Daniel
Lisa Marie Raleigh
Office of the Attorney General
THE CAPITOL PL-01
400 S. MONROE ST
TALLAHASSEE, FL 32399-1050
*Attorney General, State of Florida*
*Counsel for Florida Agency for Health Care Administration*

/s/ Jeffrey A. Lamken
Jeffrey A. Lamken